IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEN DIXON,

   Plaintiff,

    v.

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF
GEORGIA, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:06-CV-1696-TWT

ORDER

This a section 1983 action. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 32]. For reasons stated below, the motion is GRANTED.

I. BACKGROUND

The Plaintiff, Ken Dixon, brought this action against the Board of Regents of the University System of Georgia, and against Ken Vance, the Chief of Public Safety of the Georgia College & State University in Millegdeville, Georgia. Dixon worked as a university police officer until he was terminated. This lawsuit arises out of the circumstances of his termination.


Dixon alleges that he was fired because he exercised his freedom of speech. In the Spring of 2006, Dixon complained to Bob Haney, Executive Assistant to the Vice-President at Georgia College and State University, about a fellow employee. Specifically, Dixon reported that the other employee was accessing and viewing pornography on his workplace computer. Dixon further indicated that he was concerned because children were sometimes present in a facility near the university public safety office. He indicated that he wanted the matter taken care of, but made clear that he did not want anyone to know that he had made the complaint. Based on Dixon's complaint, Haney directed Chad McDonald, an IT professional, to determine whether the other employee's computer contained pornography. McDonald's investigation determined that there was pornography on the computer. As a result, the university told the other employee that he could retire or be fired. He retired.

Following the other employee's departure, Robert Butler, a detective at the Department of Public Safety at the university, noticed that his computer was running slowly. As a result, he asked McDonald for assistance. McDonald's examination revealed that someone had accessed Butler's computer without authorization. The individual logged in with the user name "ken.dixon@gscu.edu." McDonald informed Deputy Director Richard Goodson of what appeared to be an unauthorized use of Butler's computer.

When confronted about the unauthorized access, Dixon denied it. This denial prompted Goodson to investigate further. His additional investigation confirmed, in his view, that Dixon had inappropriately accessed Butler's computer.

Goodson confronted Butler with the additional evidence. He indicated that he did not believe Dixon's denials. Goodson asked him to turn in his gun and badge, and told him that he was terminated. Later that day, Dixon contacted Vance to discuss his termination. After a series of conversations, Vance rescinded Dixon's termination. Instead, Vance placed him on suspension with pay.

In the course of the next month, Vance and Dixon spoke on several occasions. During one of the conversations, Dixon noted that he was the one that turned in Ed Robinson. Shortly after this conversation, Vance reinstated Dixon. Vance indicated that investigation of access to Butler's computer was closed, he should let the matter drop, and that he could start back in just a few days.

Dixon, however, was dissatisfied with how the investigation turned out. After being reinstated, he went to the Department of Human Resources and requested that than an investigation be conducted into the issue of Butler's computer, and that the investigation be conducted internally within the Department of Public Safety. Furthermore, he filed a complaint with the Milledgeville Police Department concerning the issue of unauthorized access to Butler's computer.

In July of 2006, the Plaintiff was terminated. Among the reasons for his discharge were "seven incidences of disciplinary action." These incidents included conduct constituting insubordination, for accessing a university investigator's computer without authorization, and reporting the status of an ongoing investigation. Furthermore, his discharge letter reflected concerns about his integrity as well as his ability to work well with others. (Defs.' Statement of Material Facts; Ex. 4.) The Plaintiff appealed his termination, but abandoned the appeal after he filed this action.

## II.  MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  DISCUSSION

Section 1983 provides a cause of action for persons whose rights under the federal constitution have been violated under color of state law. 42 U.S.C. § 1983. The statute confers no substantive rights itself. Rather, it provides "a method of vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989). To establish a section 1983 violation, the Plaintiff must show (1) conduct committed by a person acting under color of state law (2) that deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

At the outset, the Plaintiff's claims against the Board of Regents should be dismissed. A state is not a "person" within the meaning of section 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Therefore, damage claims against the Board, as well as any claim against Vance in his official capacity, should be dismissed.

Vance moves for summary judgment on his defense of qualified immunity. In his individual capacity, Vance is immune from liability for civil damages unless he violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects government

officials performing discretionary functions from suits in their individual capacities. McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007).

It is undisputed that Vance was performing discretionary functions of public employment when he disciplined and fired the Plaintiff. Thus, the Court must address the two questions that are central to the qualified immunity defense. First, do the plaintiff's allegations establish a constitutional violation? Hope v. Pelzer, 536 U.S. 730, 736-42 (2002); Saucier v. Katz, 533 U.S. 194, 201 (2001). Second, was the right clearly established? Saucier, 533 U.S. at 201; Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). If the answer to either of these is no, the defendant is entitled to qualified immunity.

In this case, the Plaintiff cannot show that his constitutional rights were violated. For a public employee to establish a prima facie case of First Amendment retaliation, he must show: (1) that the speech can be fairly characterized as relating to a matter of public concern; (2) that his interests as a citizen outweigh the interests of the State as an employer; and (3) that the speech played a substantial or motivating role in the government's decision to take an adverse employment action. Akins v. Fulton County, 420 F.3d 1293, 1305 (11th Cir. 2005).

The speech at issue here is the Plaintiff's anonymous complaint that another employee's computer contained pornography. The Plaintiff is unable to meet the third

part of the test for First Amendment retaliation. Dixon has not put forth any evidence suggesting that his speech played a "substantial" or even a "motivating" factor in his termination. Ample evidence suggests that Dixon violated internal policies with regards to accessing a co-worker's computer, and that he was insubordinate. The Plaintiff does not even put forth a theory as to why his superiors would retaliate against him for making the complaint about another employee. The Defendants have put forth substantial evidence that they would have taken the same actions in the absence of the protected speech. There is no reason to address the first two parts of the First Amendment test as the Plaintiff is unable to satisfy part three.

The Supreme Court has explained that the salient question for the purpose of determining whether a right was "clearly established" is whether the state of the law at the time of the violation gave the official fair warning that his alleged treatment of the individual was unconstitutional. Hope, 536 U.S. at 741. "While officials must have fair warning that their acts are unconstitutional, there need not be a case 'on all fours,' with materially identical facts, before we will allow suits against them." Holloman v. Harland, 370 F.3d 1252, 1277 (2004) ("This circuit was recently chastised by the Supreme Court for taking an unwarrantedly narrow view of the circumstances in which public officials can be held responsible for their constitutional violations.").

In <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1349-55 (11th Cir. 2002), the Eleventh Circuit held that a right is clearly established: (1) where specific words in the federal statute or constitutional provision render the law applicable to the challenged conduct; (2) where judicial decisions clearly apply to a wide variety of factual circumstances; and (3) where precedents involve materially similar facts. <u>Id.</u> at 1350-51. A plaintiff may overcome the qualified immunity defense without relying on fact-specific case law when a preexisting constitutional rule applies with "obvious clarity." <u>Id.</u> at 1352.

Even if there was a First Amendment violation, Vance would still be protected by qualified immunity. After <u>Hope</u>, courts have been hesitant to hold that the case-by-case First Amendment retaliation analysis applies with obvious clarity to a defendant's conduct. See <u>Collier v. Clayton County Community Service Bd.</u>, 236 F. Supp. 2d 1345, 1369 (N.D. Ga. 2002) ("[I]t is clear that the matter is debatable enough so as to lead to the conclusion that the law was not sufficiently established to alert the defendants that they might have been acting illegally."); <u>see also</u> <u>Anderson v. Burke County, Ga.</u>, 239 F.3d 1216, 1222 (11th Cir. 2001) ("[O]nly in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated 'clearly established' federal rights.") (quoting <u>Hansen v. Soldenwagner</u>, 19 F.3d 573, 576 (11th Cir. 1994)); <u>Lassiter v. Alabama A&M University, Bd. of Trustees</u>, 28 F.3d 1146, 1150 (11th Cir. 1994). Here, Vance

terminated Dixon because of insubordination rather than because of his speech. Vance was not on notice that this violated the Plaintiff's First Amendment rights.

To the extent that the Plaintiff seeks prospective injunctive relief against the State, his claim should be dismissed. The Plaintiff has failed to show a First Amendment violation. His speech was not a substantial or motivating part of his termination. Finally, the Plaintiff's procedural due process claim should be dismissed. The Defendants argue that Dixon had a right to appeal his termination through the university, but opted not to do so. The Plaintiff does not address this argument in his brief. The due process claim should be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment [Doc. 32] is GRANTED.

SO ORDERED, this 1 day of November, 2007.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge